**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GUS ALASTANOS, Individually and for Others Similarly Situated, | Case No. _____ |
| v. | Jury Trial Demanded |
| LINDERLAKE CORPORATION. | FLSA Collective Action<br>Rule 23 Class Action |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

SUMMARY

1. Gus Alastanos (Alastanos) brings this class and collective action to recover unpaid wages and other damages from Linderlake Corporation (Linderlake).

2. Linderlake employed Alastanos as one of its Shift Rate Employees (defined below) in Illinois.

3. Alastanos and the other Shift Rate Employees regularly work more than 40 hours a workweek.

4. But Linderlake does not pay Alastanos and the other Shift Rate Employees for all their hours worked.

5. Instead, Linderlake pays Alastanos and the other Shift Rate Employees for only up to 8 hours a workday, even when these employees work in excess of 8 hours in a workday (Linderlake's "shift rate pay scheme").

6. But Alastanos and the other Shift Rate Employees are regularly required to work more than 8 hours a workday to complete their job duties.

7. Additionally, Linderlake does not pay Alastanos and the other Shift Rate Employees overtime wages at the required premium rates for hours worked in excess of 40 a workweek.

8. Instead, Linderlake paid Alastanos and other Shift Rate Employees per diems that Linderlake excludes when calculating these employees' regular rates of pay for overtime purposes (Linderlake's "per diem pay scheme").

9. Linderlake's shift rate and per diem pay schemes violate the Fair Labor Standards Act (FLSA) and the Illinois Minimum Wage Law (IMWL) by depriving Alastanos and the other Shift Rate Employees of overtime compensation at rates not less than 1.5 times their regular rates of pay—based on all renumeration—for all hours worked in excess of 40 a workweek.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. The Court has supplemental jurisdiction over the Illinois state law claims pursuant to 28 U.S.C. § 1367 because they arise from the same common nucleus of operative facts as the FLSA claims asserted.

12. This court has general personal jurisdiction over Linderlake because it is a domestic corporation with its principal place of business in Westmont, Illinois.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Linderlake maintains its principal place of business in Westmont, DuPage County, Illinois, which is in this District and Division.

## PARTIES

14. Linderlake employed Alastanos as a Senior Right of Way Agent in Illinois from approximately September 2023 until May 2024.

15. Throughout his employment, Linderlake paid Alastanos under its shift rate and per diem pay schemes.

16. Alastanos's written consent is attached as **Exhibit 1**.

17. Alastanos brings this class and collective action on behalf of himself and the other Shift Rate Employees who Linderlake paid under its shift rate and/or per diem pay schemes.

18. The putative collective of similarly situated employees is defined as:

> **All Linderlake Right of Way Agents, Senior Right of Way Agents, and similar employees employed during the last three years (the "FLSA Collective Members").**

19. Alastanos also seeks to represent a class under the IMWL pursuant to Fed. R. Civ. P. 23.

20. The putative Illinois class of similarly situated employees is defined as:

> **All Linderlake Right of Way Agents, Senior Right of Way Agents, and similar employees employed in Illinois during the last three years (the "Illinois Class Members").**

21. The FLSA Collective Members and the Illinois Class Members are collectively referred to as the "Shift Rate Employees."

22. Linderlake is an Illinois corporation headquartered in Westmont, Illinois.

23. Linderlake may be served through its registered agent: **Mark F. Poncer, 1104 Williamsburg St., Westmont, Illinois 60559**, or wherever he may be found.

## FLSA COVERAGE

24. At all relevant times, Linderlake was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

25. At all relevant times, Linderlake was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

26. At all relevant times, Linderlake was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling,

or otherwise working on goods or materials—such as cell phones, computers, pens, and pencils—that have been moved in or were produced for commerce. 29 U.S.C. § 203(s)(1).

27. At all relevant times, Linderlake has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

28. At all relevant times, Alastanos and the other Shift Rate Employees were Linderlake's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

29. At all relevant times, Alastanos and the other Shift Rate Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

30. Linderlake "is centered on providing full-service land acquisition services, from initial route analysis and feasibility through damage settlement and file closeout on a project basis, and also provides contract, contract-to-hire and direct hire field services, right-of-way, and management personnel to the telecommunications, power delivery, water, transportation and gas industries."[1]

31. To meet its business objectives, Linderlake employs workers, including Alastanos and the other Shift Rate Employees, to obtain easements from property owners.

32. While exact job titles and job duties may differ, these employees are subjected to the same or similar pay practices—Linderlake's shift rate pay scheme and per diem pay scheme—for similar work.

33. For example, Linderlake employed Alastanos as a Senior Right of Way Agent in and around Union and Johnson Counties, Illinois from approximately September 2023 until May 2024.

34. As a Senior Right of Way Agent, Alastanos's primary job duties included meeting with property owners to obtain easement agreements allowing for installation of new fiberoptic cable,

---

[1] https://linderlake.com/ (last visited January 16, 2025).

submitting appropriate easement documentation to proper governmental entities, completing and sending reports to the project manager, and attending progress meetings.

35. Throughout his employment, Alastanos was required to record his hours worked, in accordance with Linderlake's shift rate pay scheme, via Linderlake's designated timekeeping system.

36. But these "reported" hours worked did not accurately reflect the number of hours Alastanos actually worked.

37. Rather, the number of "reported" hours reflected the 8 hour per workday cap that Linderlake imposed on him.

38. Throughout his employment, Alastanos regularly worked more than 40 hours a workweek.

39. Indeed, throughout his employment, Alastanos typically worked 10 to 12 hours a workday for 5 to 6 days a workweek (50 to 72 hours a workweek).

40. And Linderlake agreed to pay Alastanos $34 an hour for his first 40 hours worked each workweek plus overtime for his hours worked over 40.

41. But throughout his employment, Linderlake did not pay Alastanos for all his hours worked.

42. Instead, throughout his employment, Linderlake paid Alastanos under its shift rate pay scheme.

43. Under its shift rate pay scheme, Linderlake paid Alastanos for only up to 8 hours per workday.

44. When Alastanos worked under 8 hours in a workday, Linderlake only paid him for the number of hours he worked.

45. But throughout his employment, Alastanos regularly worked more than 8 hours a workday to complete his job duties and responsibilities in accordance with Linderlake's (and its clients') policies, procedures, standards, and expectations.

46. And when Alastanos worked beyond his 8-hour daily cap, Linderlake did not pay him for those hours.

47. And Linderlake likewise pays the other Shift Rate Employees under its shift rate pay scheme.

48. And like Alastanos, the other Shift Rate Employees typically work approximately 10 to 12 hours a workday for 5 to 6 days a workweek (50 to 72 hours a workweek).

49. Despite knowing Alastanos and the other Shift Rate Employees regularly perform their normal job duties in excess of 8 hours a workday, Linderlake does not pay them for the same.

50. Instead, like Alastanos, Linderlake forces the other Shift Rate Employees to perform their regular job duties without compensation.

51. Linderlake thus required, requested, suffered, or permitted them to work in excess of 8 hours a workday to complete their job duties and responsibilities in accordance with Linderlake's (and its clients') policies, procedures, standards, and expectations, for Linderlake's primary benefit.

52. Additionally, Linderlake pays Alastanos and the other Shift Rate Employees according to its per diem pay scheme.

53. Linderlake pays Alastanos and the other Shift Rate Employees per diems of approximately $120 a day for only up to 6 days a workweek, and not each workday spent away from home.

54. And Linderlake knows these per diems must be, but are not, included in Alastanos's and the other Shift Rate Employees' regular rates of pay for overtime purposes.

55.     Thus, under Linderlake's shift rate pay scheme and per diem pay scheme, it deprives Alastanos and the other Shift Rate Employees of overtime pay, at the required rate—based on all remuneration—for the work they perform beyond their 8-hour daily cap during workweeks in which they work more than 40 hours, in violation of the FLSA and IMWL.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

56.     Like Alastanos, the other Shift Rate Employees are victimized by Linderlake's uniform, shift rate pay scheme and per diem pay scheme.

57.     Other Shift Rate Employees worked with Alastanos and indicated they were paid in the same manner, performed similar work, and were subject to Linderlake's shift rate and per diem pay schemes.

58.     Based on his experience with Linderlake, Alastanos is aware Linderlake's shift rate pay scheme and per diem pay scheme were imposed on other Shift Rate Employees.

59.     The Shift Rate Employees are similarly situated in the most relevant respects.

60.     Even if their precise job duties or locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages for all overtime hours worked.

61.     Therefore, the specific job titles or precise job locations of the Shift Rate Employees do not prevent class or collective treatment.

62.     Rather, Linderlake's shift rate pay scheme and per diem pay scheme render Alastanos and the other Shift Rate Employees similarly situated for the purpose of determining their right to wages, including overtime wages, for all hours worked.

63.     Linderlake's records reflect the number of "on the clock" hours the Shift Rate Employees recorded working each workweek.

64.     Linderlake's records also show the Shift Rate Employees were only paid for a maximum of 8 hours each workday.

65. The back wages owed to Alastanos and the other Shift Rate Employees can therefore be calculated using the same formula applied to the same records.

66. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Linderlake's records, and there is no detraction from the common nucleus of liability facts.

67. Therefore, the issue of damages does not preclude class or collective treatment.

68. Alastanos's experiences are therefore typical of the experiences of the other Shift Rate Employees.

69. Alastanos has no interest contrary to, or in conflict with, the other Shift Rate Employees that would prevent class or collective treatment.

70. Like each Shift Rate Worker, Alastanos has an interest in obtaining the unpaid wages owed under federal and Illinois law.

71. Alastanos and his counsel will fairly and adequately protect the interests of the other Shift Rate Employees.

72. Alastanos retained counsel with significant experience in handling complex class and collective action litigation.

73. A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

74. Absent this class and collective action, many Shift Rate Employees will not obtain redress for their injuries, and Linderlake will reap the unjust benefits of violating the FLSA and IMWL.

75. Further, even if some of the Shift Rate Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

76. Indeed, the multiplicity of actions would create a hardship to the Shift Rate Employees, the Court, and Linderlake.

77. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Shift Rate Employees' claims.

78. The questions of law and fact that are common to each Shift Rate Employee predominate over any questions affecting solely the individual members.

79. Among the common questions of law and fact are:

a. Whether Linderlake engaged in a policy or practice of only paying the Shift Rate Employees for a maximum of 8 hours a workday, even if they worked more;

b. Whether Linderlake knew, or had reason to know, they required, requested, suffered, permitted, or allowed the Shift Rate Employees to work beyond their predetermined shifts without compensation;

c. Whether Linderlake paid the Shift Rate Employees per diems that it excluded from their regular rates of pay for overtime purposes;

d. Whether Linderlake failed to pay the Shift Rate Employees overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration received—for hours worked after 40 in a workweek;

e. Whether Linderlake failed to pay the Shift Rate Employees overtime wages for all overtime hours worked, including those worked beyond their predetermined shifts;

f. Whether Linderlake's decision not to pay the Shift Rate Employees wages, including overtime hours, for all hours worked was made in good faith; and

g. Whether Linderlake's violations were willful.

80. Alastanos knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

81. As part of its regular business practices, Linderlake intentionally, willfully, and repeatedly violated the FLSA and IMWL with respect to Alastanos and the other Shift Rate Employees.

82. Linderlake's shift rate pay scheme and per diem pay scheme deprived Alastanos and the other Shift Rate Employees of the overtime wages at the required rate under the FLSA and IMWL.

83. There are many similarly situated Shift Rate Employees who have been denied overtime pay at the required rate, in violation of the FLSA, who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

84. The Shift Rate Employees are known to Linderlake, are readily identifiable, and can be located through Linderlake's business and personnel records.

### LINDERLAKE'S VIOLATIONS WERE WILLFUL

85. Linderlake knew it employed Alastanos and the other Shift Rate Employees.

86. Linderlake knew it was subject to the FLSA's overtime provisions.

87. Linderlake knew the FLSA required it to pay non-exempt employees, including Alastanos and the other Shift Rate Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 a workweek.

88. Linderlake knew Alastanos and each Shift Rate Worker worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours worked via Linderlake's timekeeping system.

89. Linderlake knew Alastanos and the other Shift Rate Employees were non-exempt employees entitled to overtime wages.

90. Linderlake knew it paid Alastanos and the other Shift Rate Employees under its shift rate pay scheme.

91. Linderlake knew it paid Alastanos and the other Shift Rate Employees only up to 8 hours a workday.

92. Linderlake knew the FLSA required it to pay employees, including Alastanos and the Shift Rate Employees, for all hours they performed compensable work, including overtime hours.

93. Linderlake knew that, as Alastanos's and the other Shift Rate Employees' employer, it had a duty to ensure they were not performing work that Linderlake did not want performed.

94. Linderlake knew Alastanos and the other Shift Rate Employees regularly worked beyond 8 hours a workday to complete their job duties and responsibilities for its primary benefit because Linderlake required them to do so.

95. Thus, Linderlake knew Alastanos and the other Shift Rate Employees performed compensable work beyond 8 hours a workday.

96. Linderlake required, requested, suffered, permitted, or allowed Alastanos and the other Shift Rate Employees to work beyond 8 hours a workday.

97. Nonetheless, Linderlake only paid Alastanos and the other Shift Rate Employees for a maximum of 8 hours a workday, regardless of whether they worked more.

98. Linderlake knew it paid Alastanos and the other Shift Rate Employees per diems that it must include in their regular rate of pay.

99. Nonetheless, Linderlake excluded the per diems from these employees' regular rates.

100. In other words, Linderlake knew, should have known, or recklessly disregarded whether it failed to pay Alastanos and the other Shift Rate Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked, including hours worked beyond their 8-hour shifts, in willful violation of the FLSA.

101. Linderlake's failure to pay Alastanos and the other Shift Rate Employees overtime wages at the required rate—based on all remuneration received—for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

102. Linderlake knew, should have known, or recklessly disregarded that its conduct described in this Complaint violated the FLSA.

103. Linderlake knowingly, willfully, and/or in reckless disregard carried out this shift rate pay scheme and per diem pay scheme that deprived Alastanos and the other Shift Rate Employees of wages, including overtime wages, for all hours worked at the required rate—based on all remuneration—for all hours worked after 40 in a workweek, in willful violation of the FLSA.

## COUNT I
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

104. Alastanos brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

105. Linderlake violated, and is violating, the FLSA by employing non-exempt employees (Alastanos and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

106. Linderlake's conduct harmed Alastanos and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

107. Accordingly, Linderlake owes Alastanos and the other FLSA Collective Members the difference between the wages actually paid and the overtime wages earned.

108. Because Linderlake knew or showed reckless disregard for whether its shift rate pay scheme and per diem pay scheme violated the FLSA, it owes Alastanos and the other FLSA Collective Members these wages for at least the past 3 years.

109. Linderlake is also liable to Alastanos and the other FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

110. Finally, Alastanos and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

**COUNT II**

**FAILURE TO PAY OVERTIME WAGES UNDER THE IMWL**
**(ILLINOIS CLASS)**

111. Alastanos incorporates all other paragraphs by reference.

112. Alastanos brings his IMWL claim on behalf of himself and the Illinois Class Members pursuant to FED. R. CIV. P. 23.

113. The conduct alleged violates the IMWL (820 ILCS 105/1, *et seq.*).

114. At all relevant times, Linderlake was an "employer" within the meaning of the IMWL.

115. At all relevant times, Linderlake employed Alastanos and the Illinois Class Members as covered "employees" within the meaning of the IMWL.

116. The IMWL requires employers, like Linderlake, to pay employees, including Alastanos and the Illinois Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

117. Alastanos and the Illinois Class Members are entitled to overtime pay under the IMWL.

118. Linderlake violated, and is violating, the IMWL by failing to pay Alastanos and the Illinois Class Members overtime wages at rates not less than 1.5 times their regular rates of pay for

all hours worked in excess of 40 a workweek, including hours worked "off the clock." *See* 820 ILCS 105/4a.

119.    Linderlake's unlawful conduct harmed Alastanos and the Illinois Class Members by depriving them of the overtime wages they are owed.

120.    Accordingly, Alastanos and the Illinois Class Members are entitled to recover their unpaid overtime compensation owed from the 3 years prior to the filing of this Complaint, treble damages, as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorney's fees, costs, and expenses. *See* 820 ILCS 105/12(a).

## JURY DEMAND

121.    Alastanos demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Alastanos, individually and on behalf of the other Shift Rate Employees, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b.    An Order certifying a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Alastanos and his counsel to represent the interests of the Shift Rate Employees;

d.    An Order finding Linderlake liable to Alastanos and the other FLSA Collective Members for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e.    An Order finding Linderlake liable to Alastanos and the Illinois Class Members for unpaid overtime wages owed under the IMWL, treble damages, as well as

monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

f. A Judgment against Linderlake awarding Alastanos and the other Shift Rate Employees all their unpaid overtime wages, liquidated damages, treble damages, monthly statutory damages, and any other penalties available under the FLSA and IMWL;

g. An Order awarding attorney's fees, costs, and expenses;

h. Pre- and post-judgment interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Dated: January 17, 2025

Respectfully submitted,

**WERMAN SALAS P.C.**

By: /s/ *Douglas M. Werman*
Douglas M. Werman
Maureen A. Salas
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
Phone: (312) 419-1008
dwerman@flsalaw.com
msalas@flsalaw.com
*Local Counsel for Plaintiff*

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:     (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:     (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR ALASTANOS &
THE SHIFT RATE EMPLOYEES**